USDC SCAN INDEX SHEET










SWD    6/14/05    10:45
3:05-CV-01213    NORTH SHORE MILITIA V. HAWK
*1*
*CMP.*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SAN DIEGO

05 JUN 13 PM 2:07

NORTH SHORE MILITIA RESOURCES, CORP. )
)
          PLAINTIFF, )
)
v. )  Case No.: 05 CV 1213 WQH (NLS)
)
ANTHONY HAWK, )
MATTEL INC., )
McDONALD'S CORP. )
)
          DEFENDANTS )

## COMPLAINT

1. This is an action at law and in equity for common trademark law infringement arising under 15 U.S.C. § 1114, 1125.

2. This is an action at law and in equity of antitrust violation under 15 U.S.C. § 1, 2.

3. The Plaintiff North Shore Militia Resources Corp. (herein referred to as NSM) markets and sells action figure toys designed to simulate the aerial movements in actions sports namely skiing, snowboarding, skateboarding, wakeboarding, surfing, kayaking, rock climbing, and biking. These action figures are sold under the "Huck Doll" brand name throughout the United States and abroad.

4. The Plaintiff NSM has, for a number of years, conducted substantial and continuing business using the "Huck Doll" brand name, and has valid and enforceable rights in and to the trademark "HUCK" as it pertains to toys and action figures. The mark "HUCK DOLL" was registered in September of 2001 with the US Patent and Trademark Office (herein

referred to as USPTO), and assigned number 2491416 for International Class 28: TOY ACTION FIGURES AND PLAY SETS FOR DOLLS AND ACCESSORIES THEREFOR.

5. The Plaintiff NSM began marketing snowboarding and skiing action figures in December of 1999, and sold its first product in March of 2001 under the "Huck Doll" brand name and its trademark "HUCK DOLL." NSM makes no claim to the exclusive right to use "DOLL" apart from the mark "HUCK DOLL." Herein the Plaintiff refers to its related products as "HUCK".

6. The Plaintiff NSM began marketing skateboard action figures in January of 2002, and sold its first skateboarding action figure in May of 2003 using its "HUCK" brand name.

7. The Plaintiff NSM's "HUCK" trademark as it applies to toys and action figures and its "Huck Doll" trade name are well known and distinctive. NSM has used this mark on its goods and in connection with its advertising activities, community awareness events, and to promote its image. NSM's "HUCK" trademark as it applies to toys and action figures is recognized by the public, which understands that the mark distinguishes and identifies NSM's goods and services. As a result of NSM's extensive use and promotion of its "HUCK" trademark as it applies to toys and action figures, NSM has built up and now owns valuable goodwill that is symbolized by the trademark and the trade name "Huck Doll".

8. The Plaintiff NSM entered into a business partnership with Red Bull GmbH of Austria as early as November, 2003, in reference to its registered trademark No. 75938198 in February 2002, for "Huckfest" for International Class 25: Clothing, namely, hats, jackets, shirts, sweaters, vests and headbands; and International Class 41: Organizing and conducting athletic competitions, sports exhibitions, entertainment events and contests in the nature of competitions, jumping, races, exhibitions and skills-based events for skiers, snowboarders, skateboarders and other winter and board or platform-based sports; organizing and conducting indoor and outdoor musical competitions, band concerts and music festivals; entertainment services, namely providing television programs, cable television programs,

2

video and still photo exhibitions and webcast television or video programs via a global computer network, all in the field of the foregoing sports and music entertainment events.

9. In June, 2003, the Plaintiff NSM initiated business action to prevent the abandoned trademark application of "Hucksters" by Senario of McHenry, Illinois for International Class 28, Toys, namely dolls and action figures. The Plaintiff NSM issued a cease and desist letter and Senario complied.

10. Beginning as early as February, 2003, the Plaintiff NSM can cite business relationship with Wiesner Products Inc., and commercial dealings in the production, manufacture, and marketing of "HUCK" brand name products that include toys and action figures, the applicant for abandoned applications "HuckGear" "Huck Apparel" and "HuckSport" for International Class 25: Clothing, footwear, headgear, accessories.

11. The Plaintiff NSM also states that it has had no communication or contact with applicant of "Huck" products by Manfred Huck GmbH of Germany in regards to its registered products under "HUCK" name because its application specifically states that its products are for the use in creation of nets, thread, yarn, ropes, leashes, fabric and similar products. (IC): IC 009. Life nets; fall protection devices, namely safety nets to use in construction workplaces; IC 019. Non-metal building materials, namely construction erosion control mats and roof garden mats, namely, mats for transporting and securing plants for use in plant landscaping on roofs; IC 022. Ropes, strings, tents, sails, commercial nets, canvas tarpaulins, textile nets for transporting and supporting live plants; IC 023. Thread and yarn for textile use in non-metallic building materials, safety equipment, sporting goods and playground equipment, netting, tents, tarpaulins, sails and horticultural products; IC 024. Cotton fabric, polyester fabric, and net curtains for use in non-metallic building materials, safety equipment, sporting goods and playground equipment, netting, tents, tarpaulins, sails and horticultural products; IC 028. Sports nets; namely, climbing nets, soccer ball goal nets, ball carrier nets, water polo goal nets, tennis nets, tennis court drag nets, volley ball nets, handball goal nets, badminton nets, cycleball goal nets, nets for protecting spectators at indoor and outdoor sporting events, hammer and discus throw safety netting, netting for enclosure of play areas or courts, netting for baseball pitching practice tunnels, netting for play tunnels, boat guard rail nets; sports ropes,

namely, jump ropes, tug-of-war-ropes, rope ladders and bridges for play, climbing ropes, tetherball ropes, swing ropes, fistball ropes; playground equipment, namely, climbing units and swing sets.

12. As early as 2002, Defendant Anthony Hawk began a skateboarding tour called "Tony Hawk's Boom Boom Huckjam," having registered the trademark number 2734096 for International Class 41: Organizing and conducting musical festivals, musical competitions and band concerts; organizing and conducting entertainment events and contests in the nature of competitions, jumping, races, exhibitions and skills-based events for skateboarders; organizing and conducting fashion shows and exhibition of film and videotapes; entertainment services in the nature of musical festivals, musical competitions and band concerts, contests in the nature of competitions, jumping, races, exhibitions and skills-based events for skateboarders and other board or platform-based sports, fashion shows, and exhibitions of still photographs film and videotapes; entertainment services in the nature of skateboarding; entertainment services, namely the production and distribution of television programs, cable television programs, musical and audio programs; video photograph exhibitions and webcast television or video programs via a global computer network; education services, namely providing courses of instruction in the fields of skateboarding; publication of books in July, 2003.

13. In June of 2003, the USPTO granted Anthony Hawk with registration for his mark number 2728758 for International Class 9: Prerecorded discs featuring music; prerecorded discs featuring musical festivals, musical competitions, band concerts, entertainment events and contests in the nature of competitions, jumping, races, exhibitions and skills-based events for skateboarders, BMX motocross and other sports.

14. In September of 2003, Defendant Anthony Hawk applied to register "Boom Boom Huckjam" herein referred to as "BOOM BOOM HUCKJAM" for International Class 28: Action figures, action figure accessories; balloons; balls, namely multi-purpose inflatable balls; basketballs; beach balls; bendable toys; collectable toy figures; decorations for Christmas trees; dice; dolls, dominoes; hand-held unit for playing electronic games for children and young adults not adapted for use with television; electronic hand-held unit for playing games; fantasy character toys; flying disks; foil balloons; golf balls; hand-held unit for playing a video game and stand alone video games; inflatable toys; inflatable foil toy structures; leashes used in conjunction with surfing; miniature toys for use with fingers, namely miniature parks, bowls,

4

jumps and ramps, miniature bicycles and motorcycles; miniature skateboards; miniature skateboard parts; miniature skateboard parks; miniature skateboard park equipment, namely, banks, bowls, grind benches, grind boxes, grind curves, grind rails, jumps, launch ramps, ledges, platforms, ramps, stairs, transitions; mountaineering equipment, namely hook with latch; jigsaw puzzles; jump ropes; kites; magic tricks; pet toys; playing cards; three dimensional puzzles; ramps and jumps for skateboarding; safety padding for bicycling and motocross; safety padding and safety devices for skateboards, namely, knee pads, elbow pads; sand toys; skateboarding ramps and jumps; skateboards; skateboard parts, namely skateboard decks, skateboards trucks, skateboard wheel assemblies and skateboard wheels; soccer balls; soft sculpture plush toys; stuffed toy animals; teddy bears; toy banks; toy bicycles; toy gliders; toy motorcycles; wind-up toys; yo-yos.

15. In June of 2004, Defendants Anthony Hawk, Mattel and McDonald's began selling "BOOM BOOM HUCKJAM" toys in clear violation of Plaintiff NSM's valid and enforceable rights in and to the trademark "HUCK" as it applies to toys and action figures.

16. The Defendant's "BOOM BOOM HUCKJAM" toys have created confusion in the marketplace as to the source of its goods.

## JURISDICTION AND VENUE

17. This Court has original jurisdiction over this action under 28 U.S.C. §1331, 1338, and 1367, specifically because this action relates to trademarks.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. In particular, this Court is the proper venue because the Defendants do business in this district, Anthony Hawk resides in this district, Mattel Inc. is headquartered in neighboring Los Angeles County, and because part of the events and actions of the Defendants that give rise to NSM's claims occurred in this district.

## THE PARTIES

5

19. Plaintiff NSM is a Nevada Corporation with its office and principal place of business at 365 Cathedral Court, Tahoe City, California, 96145.

20. Defendant Anthony Hawk is a business owner with his office and principal place of business at 1611-A South Melrose #362, Vista, California, 92081.

21. Defendant Mattel Inc. is a Delaware Corporation with its office and principal place of business at 333 Continental Boulevard, El Segundo, California, 90245.

22. Defendant McDonald's is a Delaware Corporation with its office and principal place of business at 2111 McDonald's Drive, Oak Brook, Illinois, 60523.

## CAUSES FOR COMMON TRADEMARK LAW INFRINGEMENT ACTION

23. The Plaintiff NSM repeats and incorporates by reference the allegations contained in paragraphs 1-22.

24. The Plaintiff NSM has marketed and sold its "HUCK" brand name on skateboard related toy products as early as May, 2003.

25. The Defendants have marketed and sold skateboard-related products with the "BOOM BOOM HUCKJAM" name as early as June, 2004.

26. The Plaintiff NSM filed USPTO patent application No. 10/406839 written in an attempt to protect its invention of the use of action sports toys to help in the aid and teaching of the aerial movements in action sports  The patent application process is pending, with the USPTO citing evidence of prior art of bowling action figures and golfing action figures used to simulate the action in those sports. Certainly the art of designing action figures has been used before, but it is the Plaintiff's belief that action figure toys have previously not been designed to

6

simulate tricks and maneuvers used in action sports, and more specifically within the realm of those sports using the term "HUCK."

27. The Plaintiff can show the fame associated with its "HUCK" mark by public appearances of its product on television, notably NBC's "The Today Show", CBS's "The David Letterman Show", ESPN's "Caught Ya", and MTV's "Cribs", and also in print media including "Sports Illustrated", "Outside Magazine", "Skiing", "Ski", "Ski Press", "Freeze", "Freeskier", "Powder", "Snowboarding", "Snowboarding Business", "Sporting Goods Business", "Creative Child", "The Wall Street Journal", "Dandelion", and "Modern Fix," among others.

28. The Defendants' product has created confusion in the marketplace as to the source of the goods, and this confusion has had the effect of infringing on the Plaintiff's valid trademark as described above. The infringement is shown by the seniority of the Plaintiff's mark, the proximity of the goods in the marketplace, the similarity of the marks, evidence of actual confusion, the similarity of marketing channels used, the lack of caution exercised by the typical purchaser, and the Defendants' intent.

29. The market placement of the Plaintiff's product is the same as the market placement of the Defendants' infringing product. The Plaintiff sells its goods through thousands of specialty outlets as well as through mass consumer markets targeting children buyers. The infringing product, as of this action, is marketed and sold in McDonald's franchises for children's Happy Meals.

30. The Plaintiff's and Defendants' products are similar in style and name. The Plaintiff creates 5-inch tall bendable toy skateboard action figures and accessories. The Defendants create 1.5-inch tall bendable toy skateboard action figures and accessories.

31. The likelihood of confusion results from: a) the use of a substantially similar mark, and b) a mark used to describe remarkably similar products. These two facts, in

7

conjunction with the fact that the two products are being marketed and sold to the same demographic and markets, have caused actual customer confusion (in the form of reverse confusion) and also cause clear likelihood of additional customer confusion.

32. The Plaintiff can site evidence of actual reverse confusion exhibited by the average consumer.

33. The Plaintiff can site evidence of actual reverse confusion by the average retailer.

34. The following is the Schedule of International Classes of Goods and Services:

## International Schedule of Classes of Goods and Services

### GOODS

| | |
|---|---|
| 1. | Chemicals used in industry, science and photography, as well as in agriculture, horticulture and forestry; unprocessed artificial resins; unprocessed plastics; manures; fire extinguishing compositions; tempering and soldering preparations; chemical substances for preserving foodstuffs; tanning substances; adhesives used in industry. |
| 2. | Paints, varnishes, lacquers; preservatives against rust and against deterioration of wood; colorants; mordants; raw natural resins; metals in foil and powder form for painters, decorators, printers and artists. |
| 3. | Bleaching preparations and other substances for laundry use; cleaning, polishing, scouring and abrasive preparations; soaps; perfumery, essential oils, cosmetics, hair lotions; dentifrices. |
| 4. | Industrial oils and greases; lubricants; dust absorbing, wetting and binding compositions; fuels (including motor spirit) and illuminants; candles, wicks. |
| 5. | Pharmaceutical, veterinary, and sanitary preparations; dietetic substances adapted for medical use, food for babies; plasters, materials for dressings; material for stopping teeth, dental wax; disinfectants; preparations for destroying vermin; fungicides, herbicides. |
| 6. | Common metals and their alloys; metal building materials; transportable buildings of metal; materials of metal for railway tracks; nonelectric cables and wires of common metal; ironmongery, small items of metal hardware; pipes and tubes of metal; safes; goods of common metal not included in other classes; ores. |
| 7. | Machines and machine tools; motors and engines (except for land vehicles); machine coupling and transmission components (except for land vehicles); agricultural implements other than hand-operated; incubators for eggs. |
| 8. | Hand tools and implements (hand-operated); cutlery; side arms; razors. |
| 9. | Scientific, nautical, surveying, electric, photographic, cinematographic, optical, weighing, measuring, signalling, checking (supervision), life-saving and teaching apparatus and instruments; apparatus for recording, |

|   | transmission or reproduction of sound or images; magnetic data carriers, recording discs; automatic vending machines and mechanisms for coin operated apparatus; cash registers, calculating machines, data processing equipment and computers; fire extinguishing apparatus. |
|---|---|
| 10. | Surgical, medical, dental, and veterinary apparatus and instruments, artificial limbs, eyes, and teeth; orthopedic articles; suture materials. |
| 11. | Apparatus for lighting, heating, steam generating, cooking, refrigerating, drying, ventilating, water supply, and sanitary purposes. |
| 12. | Vehicles; apparatus for locomotion by land, air, or water. |
| 13. | Firearms; ammunition and projectiles; explosives; fireworks. |
| 14. | Precious metals and their alloys and goods in precious metals or coated therewith, not included in other classes; jewelry, precious stones; horological and chronometric instruments. |
| 15. | Musical instruments. |
| 16. | Paper, cardboard and goods made from these materials, not included in other classes; printed matter; bookbinding material; photographs; stationery; adhesives for stationery or household purposes; artists' materials; paint brushes; typewriters and office requisites (except furniture); instructional and teaching material (except apparatus); plastic materials for packaging (not included in other classes); playing cards; printers' type; printing blocks. |
| 17. | Rubber, gutta-percha, gum, asbestos, mica and goods made from these materials and not included in other classes; plastics in extruded form for use in manufacture; packing, stopping and insulating materials; flexible pipes, not of metal. |
| 18. | Leather and imitations of leather, and goods made of these materials and not included in other classes; animal skins, hides; trunks and travelling bags; umbrellas, parasols and walking sticks; whips, harness and saddlery. |
| 19. | Building materials (non-metallic); nonmetallic rigid pipes for building; asphalt, pitch and bitumen; nonmetallic transportable buildings; monuments, not of metal. |
| 20. | Furniture, mirrors, picture frames; goods (not included in other classes) of wood, cork, reed, cane, wicker, horn, bone, ivory, whalebone, shell, amber, mother-of-pearl, meerschaum and substitutes for all these materials, or of plastics. |
| 21. | Household or kitchen utensils and containers (not of precious metal or coated therewith); combs and sponges; brushes (except paint brushes); brush-making materials; articles for cleaning purposes; steel-wool; unworked or semi-worked glass (except glass used in building); glassware, porcelain and earthenware not included in other classes. |
| 22. | Ropes, string, nets, tents, awnings, tarpaulins, sails, sacks and bags (not included in other classes); padding and stuffing materials (except of rubber or plastics); raw fibrous textile materials. |
| 23. | Yarns and threads, for textile use. |
| 24. | Textiles and textile goods, not included in other classes; beds and table covers. |
| 25. | Clothing, footwear, headgear. |

| 26. | Lace and embroidery, ribbons and braid; buttons, hooks and eyes, pins and needles; artificial flowers. |
|---|---|
| 27. | Carpets, rugs, mats and matting, linoleum and other materials for covering existing floors; wall hangings (non-textile). |
| 28. | Games and playthings; gymnastic and sporting articles not included in other classes; decorations for Christmas trees. |
| 29. | Meat, fish, poultry and game; meat extracts; preserved, dried and cooked fruits and vegetables; jellies, jams, fruit sauces; eggs, milk and milk products; edible oils and fats. |
| 30. | Coffee, tea, cocoa, sugar, rice, tapioca, sago, artificial coffee; flour and preparations made from cereals, bread, pastry and confectionery, ices; honey, treacle; yeast, baking powder; salt, mustard; vinegar, sauces (condiments); spices; ice. |
| 31. | Agricultural, horticultural and forestry products and grains not included in other classes; live animals; fresh fruits and vegetables; seeds, natural plants and flowers; foodstuffs for animals; malt. |
| 32. | Beers; mineral and aerated waters and other nonalcoholic drinks; fruit drinks and fruit juices; syrups and other preparations for making beverages. |
| 33. | Alcoholic beverages (except beers). |
| 34. | Tobacco; smokers' articles; matches. |

**SERVICES**

| 35. | Advertising; business management; business administration; office functions. |
|---|---|
| 36. | Insurance; financial affairs; monetary affairs; real estate affairs. |
| 37. | Building construction; repair; installation services. |
| 38. | Telecommunications. |
| 39. | Transport; packaging and storage of goods; travel arrangement |
| 40. | Treatment of materials. |
| 41. | Education; providing of training; entertainment; sporting and cultural activities. |
| 42. | Scientific and technological services and research and design relating thereto; industrial analysis and research services; design and development of computer hardware and software; legal services. |
| 43. | Services for providing food and drink; temporary accommodations. |
| 44. | Medical services; veterinary services; hygienic and beauty care for human beings or animals; agriculture, horticulture and forestry services. |
| 45. | Personal and social services rendered by others to meet the needs of individuals; security services for the protection of property and individuals. |

35.     The actual harm and projected risk the Plaintiff NSM's business has been subjected to and still faces now is both based on name and product reputation, and performance with respect to the lack of caution exhibited by the average purchaser. Withstanding insurance claims for product defectiveness is a stated risk, as are providing warrantee extension on products, working with individual customer complaints, and protecting from unwarranted liability claims, as well as others. The Defendants' use of the same or similar trade name as the Plaintiff places an additional burden on the Plaintiff to prove, in situations like customer complaints or product defectiveness, that the problems associated with the Defendant's products are not in fact problems with the Plaintiff's products. The confusion that results from such actions causes irreparable damage to the Plaintiff's reputation, which has a major impact on the Plaintiff's ability to conduct business.

## CAUSES FOR ANTITRUST VIOLATION ACTION

36.     The Plaintiff NSM repeats and incorporates by reference the allegations contained in paragraphs 1-35.

37.     The Plaintiff NSM asserts that the toy industry and its subcategory of action sports toys including action figures is small in terms of the number producers, suppliers, marketing channels, and products. The Plaintiff NSM can cite substantial evidence that to the Plaintiff's best knowledge it would be impossible for the Defendants to not be aware of the Plaintiff's product at the time of their alleged infringement.

38.     The Plaintiff NSM believes without prejudice that the Defendants colluded with each other with regards to the "HUCK" brand name as an effective license for selling merchandise namely toys. Based on information and belief, the Defendants formulated a trust to

collectively infringe on the Plaintiff's rights to the trade name "HUCK" as it applies to toys and action figures.

39. The Defendants have facilitated distribution of a similar product in style and name as the Plaintiff's through and only through one mass universal outlet, namely McDonald's franchises. Co-Defendant McDonald's has extraordinary large distribution channels through which it can control pricing and from which it can exclude the distribution of competing products. The products in question, "BOOM BOOM HUCKJAM", have been included in McDonald's Happy Meals, for which the consumer has had to pay no apparent additional fee. The Defendants Anthony Hawk, McDonald's, and Mattel arguably make up the most powerful names in skateboarding, fast food franchises and toys, respectively. Such conglomerations of economic resources are said to be injurious to the public and individuals because such trusts minimize, if not obliterate normal marketplace competition, and yield undesirable price controls. The Defendant's have colluded to unfairly eliminate the Plaintiff from the marketplace.

40. In addition to the alleged trademark infringement herein accused, the Plaintiff NSM, accordingly, deems all three Defendants responsible for violating the antitrust and antimonopoly laws established by the Sherman Act of 1890, the Clayton Act of 1914 and the Robinson-Patman Act of 1936 under U.S.C. 15 § 1, 2.

41. Upon information and belief, the Defendant McDonald's Corp. was notified of the Plaintiff's "HUCK" related products as early as August 2003.

42. Upon information and belief, the Defendant Mattel Inc. was notified of the Plaintiff's "HUCK" related products as early as July 2004.

43. Upon information and belief, the Defendant Anthony Hawk was notified of the Plaintiff's "HUCK" related products as early as August 2004.

44. The Plaintiff opposed the application of the "BOOM BOOM HUCKJAM" mark with the USPTO in February of 2005, and has attempted settlement discussions with Defendant Anthony Hawk since that time. The two sides appear far from a settlement of this opposition.

## ADMISSIONS

45. The Plaintiff NSM would like to regard this case with utmost standing and priority. In no way does the Plaintiff NSM wish to defame, disregard, denounce, destroy, inject with persecution, or otherwise personally attack the Defendants' standing or business well-being. It is certainly in the name competitive business markets and effective fair business practices and policies that the Plaintiff makes this action final.

46. The Plaintiff would like to explain the origin of its business name North Shore Militia Resources Corporation in view of the said ethically understood principles of business. North Shore Militia was, has been and currently is an understood term referring to a group individuals living and working together on the Northern Shore of Lake Tahoe, California. In no way has the Plaintiff exercised the thought of Militia related tactics to coerce, force, hurt or harm any individuals, business or corporations.

47. The Plaintiff NSM understands the course of action in Civil Complaints in Federal District courts and although currently acting on its own behalf in this action Pro Se, the Plaintiff would like to state that the Plaintiff has previously been represented by counsel, but that conflicts of interest with Mattel Inc. at Cowan, Liebowitz and Latman, 1133 Avenue of the Americas, New York, NY, 10036, and with McDonald's at Winston & Strawn, 200 Park Avenue, New York, NY, 10166, have forced the Plaintiff to proceed in this manner at the present time.

WHEREFORE, Plaintiff NSM prays for the following relief:

a) The Defendant's be ordered to deliver up for impoundment and for destruction all action sports toy related materials, including but not limited to, advertising materials, promotional materials, merchandise materials, or other material in the possession, custody or under the control of the Defendant's that are found to unfairly compete with Plaintiff NSM and its "HUCK" products;

b) The profits of the Defendants' actions estimated at $1,000,000.00 million as well as a punitive damage in the sum $20,350,000.00 in reference to the fines established in U.S.C. 15 § 1 of $10,000,000.00 million for corporations and $350,000.00 for individuals be made payable to the Plaintiff for violating the Plaintiff's rights as well as anti-trust law;

c) That Defendants' be required to pay Plaintiff's costs of this action and reasonable attorneys' fees;

a) For such other and further relief as the Court deems just and proper.

Dated June 13, 2005

Respectfully submitted,

*ZMk*

**Zane Murdock**
**Director**
**North Shore Militia Resources Corp.**
**365 Cathedral Court**
**PO Box 8180**
**Tahoe City, CA 96145**
**(530) 581-3681**
**zane@huckdoll.com**

14

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**
North Shore Militia Resources Corp.
PO Box 8180
Tahoe City, CA 96145

**DEFENDANTS**
Hawk, Anthony F.
Mattel, Inc.
McDonald's Corp.

FILED 05 JUN 13 PM 2:07
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** PLACER
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** San Diego
(IN U.S. PLAINTIFF CASES ONLY)

05 CV 1213 WQH NLS

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Zane Murdock
PO Box 8180
Tahoe City, CA 96145 (Ph.) 530-581-3681

**ATTORNEYS (IF KNOWN)**
John R. Sommer (c/o Anthony Hawk)
17426 Daimler St.
Irvine, CA 92614-5514 (Ph.) 949-752-5344

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

USC 15 Sections 1114, 1125 trademark infringement; USC 15 Sections 1,2 antitrust

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | PROPERTY RIGHTS | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☒ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | PERSONAL PROPERTY | ☐ 650 Airline Regs | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (13958) | ☐ 850 Securities/Commodities Exchange |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | |
| ☐ 160 Stockholders Suits | | ☐ 380 Other Personal Property Damage | LABOR | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)
☒ Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appelate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23
**DEMAND $** 21,350,000.00
Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions): JUDGE _____ Docket Number _____

DATE 6/13/05     SIGNATURE OF ATTORNEY OF RECORD  ZM

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

# 114505  $250.00  ☒ 6/13/05